

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00078-CR

MICHAEL PAUL GARRETT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Red River County, Texas
Trial Court No. CR02939

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

# MEMORANDUM OPINION

Michael Paul Garrett was convicted of robbery. After the trial court found the State's punishment-enhancement allegation true, it sentenced Garrett to sixty years' imprisonment. In his sole point of error on appeal,[1] Garrett argues that the evidence is legally insufficient to support the trial court's finding of guilt. Because we find the evidence sufficient, we affirm the trial court's judgment.

## I.       Legally Sufficient Evidence Supported the Trial Court's Finding of Guilt

### A.       Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational [fact-finder] could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the [fact-finder] 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

---

[1]In our companion cause number 06-23-00077-CR, Garrett appeals his conviction for family violence assault by occlusion.

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Here, the State alleged that Garrett, "while in the course of committing theft of property and with intent to obtain or maintain control of the property, intentionally, knowingly, or recklessly cause[d] bodily injury to Dora Smith-Garrett by striking the complainant with his fist." The victim named by the State's indictment is Garrett's mother.

## B. The Evidence

At trial, Dora testified that she had loaned money to Garrett, which Garrett had repaid a few days before the incident. On the day of the incident, Garrett spoke to Dora on the front porch of her house and again asked to borrow money. Dora locked the front door due to Garrett's "personality" and explained, while standing outside, that she had bills to pay and could not loan him more money. According to Dora, she was putting her key in the door lock to go inside when Garrett "attacked [her] . . . . on the side of [her] face." She testified that she was knocked off balance, that Garrett was wrestling with her in the yard, and that "he kept trying to choke [her]." Dora testified that she passed out because she could not breathe and that, when she woke up in the yard, Garrett and her keys were gone. Dora went to a neighbor's house and called the police.

3

Samantha Manrique testified that she was dispatched to Dora's neighbor's house and saw Dora with "obvious physical injuries to her face[,] . . . neck," and "all over her body." Dora was transported to the hospital by ambulance. Meanwhile, Manrique went to Garrett's house, which was a separate residence located on Dora's property, and recovered Dora's house and car keys from Garrett's pocket. Dora and Manrique confirmed that Garrett took the keys without Dora's permission.[2]

In his defense, Garrett testified that he did not assault Dora, despite the evidence indicating otherwise, and claimed that he had the keys before her assault.[3] As the trier of fact, the trial court found Garrett's claim incredible. In making its finding of guilt, the trial court determined that Garrett had taken Dora's keys and that "the keys were the means to the money," which "had to either be in the car or in the house."

**C.     Analysis**

A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 29.02(a)(1). A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(b)(1). "Appropriation of property is unlawful if . . . it is without the owner's effective consent." TEX. PENAL CODE ANN. § 31.03.

---

[2]Dora testified that Garrett did not take any money or other property from inside the house and did not take her car.

[3]During the State's cross-examination, Garrett denied knowledge of his prior judgments of conviction for theft, family violence assault causing bodily injury, assault against an elderly individual, and resisting arrest.

4

Garrett cites to his own self-serving testimony claiming that he had Dora's keys before the assault and argues that, as a result, "there was no evidence that Garrett took the keys with the intent to deprive his mother of them." We disagree.

The evidence at trial showed that Dora spoke with Garrett outside of her home after she "[l]ocked the door behind [her]" because of Garrett's "personality." Because of Garrett's demeanor, Dora "thought it would be more public [and safer] for [her] to come outside." Dora testified that, after she denied Garrett's request for money, Garrett assaulted her as she "commenced to putting the key in the door." Dora testified that Garrett took her house and car keys without her permission during the assault. Manrique testified that Dora asked her to retrieve the keys, which she found in Garrett's pocket.

We find that the record provided ample evidence to show that Garrett appropriated Dora's house and car keys without her effective consent and that, under the totality of the circumstances, the trial court was free to infer that Garrett's appropriation of the keys was made with the intent to deprive Dora of them. This established that Garrett committed theft. We also find that Dora's and Manrique's testimony showed that Garrett intentionally or knowingly assaulted Dora while committing the theft. As a result, we conclude that that trial court, as a rational fact-finder, could have found the essential elements of robbery beyond a reasonable doubt. Consequently, we overrule Garrett's sole point of error on appeal.

### III. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     August 29, 2023
Date Decided:       August 30, 2023

Do Not Publish